IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

02 JAN 29 PM 12: 29

U.S. DISTRICT COURT
N.D. OF ALABAMA

AMERICAN INDEMNITY COMPANY,          )
                                     )
          Plaintiff,                 )
                                     )
v.                                   ) CIVIL ACTION NO. 99-PWG-2284-NW
                                     )
NANCY TROUSDALE, ET AL.,             )
                                     )
          Defendants.                )

**ENTERED**

**JAN 2 9 2002**

MEMORANDUM OF OPINION

American Indemnity Company (hereinafter "American Indemnity"), a corporation with its principle place of business in the State of Texas, filed this action in the Northern District of Alabama pursuant to the provisions of 28 U.S.C. § 2201, 28 U.S.C. § 1332 seeking a declaration of "what, if any, duties American Indemnity is under to defend, indemnify or pay any judgment under the subject liability insurance policies which may be rendered against Nancy Trousdale, individually, and/or d/b/a Nancy[ ']s Tour[s], Jeff Trousdale, and Tracie Trousdale as a result of the allegations and cross-claims in the underlying lawsuits." The complaint avers that the amount in controversy, exclusive of interests and costs, is in excess of $75,000. This action is before the magistrate judge pursuant to the written consent of the parties to the exercise of jurisdiction by the magistrate judge. 28 U.S.C. § 636(c) and LR 73.2.

This matter is before the court on the motion for partial summary judgment filed by defendants/counterclaimants Nancy Trousdale (document #53), Sam U. Hardie, Jr. (document #51) and Gary W. Bentley and Gwen P. Bentley (document #56). In the motions, defendants/counterclaimants request that the court find that American Indemnity was under a duty to defend its insured and that it breached its contract to the insured by failing to provide a defense.

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Rule 56, *Federal Rules of Civil Procedure*.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

2

The following facts are undisputed or, if disputed, viewed in the light most favorable to the non-moving party. The defendant/counter-claimant Sam U. Hardie, Jr. (hereinafter "Hardie") filed suit against Nancy's Tours, Nancy Trousdale, individually, and d/b/a Nancy's Tours in the Circuit Court for Lauderdale County, Alabama on March 8, 1999. (Hardie's Exhibit A). Hardie amended his complaint on August 3, 1999. (Hardie's Exhibit B). Upon receipt of the original Summons and Complaint, counsel for Trousdale notified her insurer, American Indemnity Company, of this suit and forwarded the complaint on April 1, 1999. (Hardie's Exhibit C). Trousdale's counsel requested both a defense and indemnification under policies of insurance bearing policy numbers 621-445-78 and 623-53-36 issued to Robert N. and Nancy Trousdale.

American Indemnity acknowledged receipt of this complaint on April 14, 1999. (Hardie's Exhibit D). The Hardie's amendment was provided to American Indemnity by Trousdale's counsel on August 18, 1999. (Hardie's Exhibit E). In that correspondence, Trousdale's attorney, once again, demanded both a defense and indemnification under the American Indemnity's policies. Counsel also advised American Indemnity that Hardie's amended complaint, claimed damages, emotional distress, mental pain and anguish. This correspondence was forwarded to American Indemnity by certified mail with return receipt requested. It was received on August 20, 1999. (Hardie's Exhibit F).

On August 31, 1999 American Indemnity filed a complaint for declaratory judgment in this court stating that had not provided a defense to its insureds for the allegations, as amended, asserted by Hardie. (Complaint, p. 7, ¶ 41). In the declaratory judgment complaint, American Indemnity contends that it had no duty to defend or indemnify with respect to any of the claims asserted against and/or damages claimed against Nancy Trousdale, individually, and d/b/a Nancy's Tours. (Complaint, p.13, ¶ 46). American Indemnity filed its amended complaint on September 20,

1999. In the amended complaint, American Indemnity again asserts that it had no duty to defend and/or indemnify and further asserts that Hardie's amended complaint seeks "economic damages which are not covered damages under American Indemnity's policies. The addition of mental anguish allegations are spurious seeking only to invoke coverage for economic loss, which is not covered under the policies." (Amended complaint, p.10, ¶ 14). On November 2, 1999 Hardie filed a counterclaim alleging that American Indemnity owed coverage to Trousdale. (Document #14).

On October 22, 1999 Trousdale filed a counterclaim alleging breach of contract and bad faith. (Document #11).

After American Indemnity filed the declaratory judgment action to determine whether there was a duty to defend and indemnify Trousdale, Trousdale settled the underlying action with Hardie for $125,000.00, assigning her contractual rights as against American Indemnity to Hardie of $125,000.00. Trousdale also settled the underlying action with the Bentleys for $300,000 assigning her contractual rights as against American Indemnity to the Bentleys.

On March 6, 2000 Hardie filed an amended counterclaim requesting $125,000 based on Trousdale's assignment of her breach of contract rights. Trousdale and the Bentleys entered into a stipulation to enter a consent judgment in the amount of $300,000 in favor of the Bentleys and against Trousdale. (Document #34, Exhibit C). On March 6, 2000 the Bentleys filed a counterclaim (document #34) requesting $300,000 based on Trousdale's assignment of her breach of contract rights.

Trousdale entered guilty pleas on February 22, 2001 to 84 counts of violations of the Alabama Securities Act and was sentenced to 83 concurrent ten year sentences and one two year consecutive sentence.

4

Trousdale was insured by American Indemnity, Policy Number 6235336, in effect from March 30, 1998 to March 30, 1999. (See defendants' Request for Admissions and Plaintiff's responses thereto).

The policy issued to Trousdale contains the following provisions:

**SECTION I - COVERAGES**

**COVERAGE A.    BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at out discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But: ....

***

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence that takes place in the "coverage territory;" and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

    c.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

5

The policy defines certain pertinent words:

"Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from these at any time.

\*\*\*

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The policy also includes the following policy provisions:

**Section IV - Commercial General Liability Conditions**

\*\*\*\*

2.     **Duties in the Event of Occurrence, Offense, Claim or Suit -**

d.  No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

3.     **Legal Action Against Us** - No person or organization has a right under this coverage part:

b.  To sue us on this coverage part unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be libel for damages that are not payable under the terms of this coverage part or that are in excess of the applicable limit of insurance.  **An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.** (Emphasis Added).

6

The Common Policy Conditions also provides:

### POLICY CONDITIONS

All parts included in this policy are subject to the following conditions:

F.    Transfer of your rights and duties under this policy. **Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured**. (Emphasis Added).

American Indemnity has established that an issue of material fact remains. American Indemnity had argued earlier that summary judgment was premature because discovery had not been completed. Trousdale's attorney would not permit her to be deposed while the criminal proceedings against her were pending. American Indemnity argued that "questions of fact surrounding American Indemnity's duty to defend an insured for conduct which, according to the allegations, has the potential to be criminal." The criminal proceedings against Trousdale have since been completed. In the end, however, termination of the criminal proceeding is immaterial to whether American Indemnity had a duty to defend.

Duty to Defend General Principles

An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured. *Alfa Mutual Insurance Company v. Morrison*, 613 So.2d 381, 382 (Ala. 1993); *Ladner & Company v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977). "If the allegations of the insured party's complaint show an accident or occurrence which come within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.*, 585 So.2d 1365, 1367 (Ala. 1991) (internal citations omitted). Where the allegations of

7

the complaint show that no injury alleged is within the coverage of the policy, however, or where the allegations are ambiguous, "the court is not limited to the bare allegations of the complaint ... but may also look to facts which may be proved by admissible evidence." *Chandler*, 585 So.2d at 1367 (internal citations omitted); *see also Perkins v. Hartford Ins. Group,* 932 F.2d 1392 (11th Cir. 1991.

Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *see Colonial Life & Accident Ins. Co. v. Collins*, 280 Ala. 373, 194 So.2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *See U.S. Fidelity and Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985). If there is no ambiguity in the insurance contract, the contract must be enforced as written and courts may defeat the express provisions of a policy including exclusions from coverage by making a new contract for the parties. *Altiere v. Blue Cross & Blue Shield*, 551 So.2d 290, 292 (Ala. 1989). Exceptions to coverage are to be interpreted as narrowly as possible in order to provide maximum coverage to the insured. (*Id.*).

An insurer's duty to defend is far more extensive than its duty to pay. *Burnham Shoes, Inc. v. West American Insurance Co.*, 504 So.2d 238 (Ala. 1987); *United States Fidelity and Guaranty Company v. Armstrong*, 479 So.2d 1164 (Ala. 1985); *Ladner and Company v. Southern Guaranty Insurance Co.*, 347 So.2d 100 (Ala. 1977). "If the injured party's complaint alleges an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured. *Armstrong, supra* at 1167; *Ladner and Company, supra* at 102.

8

Mental Anguish as Bodily Injury

"[T]he duty to defend arises when the original complaint alleges a state of facts within the coverage of the policy." *U.S. Fidelity and Guaranty Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985). American Indemnity argues that because Hardie did not allege mental anguish in the original complaint, there was no bodily injury, within the coverage of the policy and thus no duty to defend. Prior to American Indemnity filing this declaratory judgment action, Hardie amended the complaint to include a count for mental anguish which has been held to constitute "bodily injury" in policy provisions similar to the one before this case. See *American States Insurance Co. v. Cooper*, 518 So.2d 708, 709 (Ala. 1987) (Court found that mental anguish was a bodily injury both under policy defining bodily injury as "sickness or disease" and under policy including mental anguish within the definition of personal injury.) In *Morrison Assurance Company v. North American Reinsurance*, 588 F. Supp. 1324, 1327 (N.D. Ala. 1984), *aff'd*, 760 F.2d 279 (11th Cir. 1985), this court held:

> The "definitions" section [of the basic policy] defines "bodily injury" as follows: "Bodily injury" means bodily injury, *sickness* or *disease* sustained by any person which occurs during the policy period, including death at anytime resulting therefrom. (emphasis supplied).
>
> . . . .
>
> The words "mental anguish" as contained in the complaint are nowhere contained in the basic policy. Construing the language against Morrison, as it must be, "mental anguish" is necessarily included within the terms "sickness" or "disease."

See also, *American Economy Insurance Company v. Fort Deposit Bank*, 890 F. Supp. 1011 (M.D.

Ala. 1995)("In construing the language of insurance contracts governed by Alabama law, tribunals have characterized mental anguish as 'bodily injury.'" The court relief upon *Morrison Assurance Company* and *Cooper* in support of this position.) *American States Insurance Company v. Martin*, 662 So.2d 245, 250 (Ala. 1995) (Insurer conceded that mental anguish is a bodily injury under the policy which defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at anytime.")[1]

Despite American Indemnity's argument to the contrary, under Alabama law, the court cannot ignore the amended complaint:

> Because of modern pleading practices, which allow the liberal amendment of complaints, "the initial determination of coverage is not binding." *Tapscott v. Allstate Ins. Co.*, 526 So.2d 570, 574 (Ala. 1988). If a complaint that did not allege acts covered by an insurance policy is amended to add allegations of actions that are covered under the policy, the insurer's duty to defend is then activated. *Tapscott*, 526 So.2d at 574.

*Blackburn v. Fidelity and Deposit Co. of Maryland*, 667 So.2d 661, 670 (Ala. 1995).

American's duty to defend thus arose in August, 1999 when Hardie filed the amended complaint alleging mental anguish.

Occurrence

American Indemnity argues that because Trousdale's actions were criminal in nature, these acts do not constitute "occurrences" under the policy because an "occurrence" is defined as

---

[1] In the complaint, Hardie alleged that he discovered that the representations concerning material facts were false in January, 1999. In his deposition, he testified that he experienced embarrassment at that time. (Hardie deposition, pp. 99-103). An "occurrence" arises when the mental anguish is experienced. *North American Specialty Ins. Co. v. Universal Underwriters Ins. Co.*, 703 So.2d 995, 997-98 (Ala. 1997). The policy was in effect from March 30, 1998 to March 30, 1999. Clearly, the "occurrence" occurred while the policy was in effect. American Indemnity has not argued that any occurrence would have been beyond the policy period.

"an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The amended complaint was filed on August 6, 1999. The declaratory judgment action was filed on August 31, 1999. Trousdale and counterclaimants settled the underlying action on or about March 3, 2000.   Trousdale was not indicted until April 19, 2000.  She did not plead guilty and was not sentenced until the spring of 2001.  Because the duty to defend arose in August, 1999 and Trousdale was not indicted until April 2000 after settling the underlying action, the subsequent guilty plea could not retroactively relieve American Indemnity of its duty to defend.

American Indemnity further argues that there is no occurrence/accident under the policy and thus no duty to defend based on Trousdale's alleged intentional deception.  This contention overlooks the fact that Hardie's complaint alleged not only intentional deception but also negligent, reckless, and mistaken representations.  The Alabama Supreme Court has held "that the term 'accident' does not exclude human fault called negligence." *U. S. Fidelity and Guaranty Co. v. Armstrong*, 479 So.2d 1164, 1167 (Ala. 1985); *L. J. Moss v. Champion Insurance Co.*, 442 So.2d 26, 28 (Ala. 1983); *U. S. Fidelity and Guaranty Co. v. Bonitz Insulation Co. of Alabama*, 424 So.2d 569, 571 (Ala. 1982); *Employers Ins. Co. of Ala., Inc. v. Ala. Roofing and Siding Co., Inc.*, 271 Ala. 394, 396, 124 So.2d 261, 262 (1960), *Employers Ins. Co. of Ala., Inc. v. Rives*, 264 Ala. 310, 312, 87 So.2d 653, 655 (1955).  Likewise, negligent or reckless misrepresentations of material facts constitute "occurrences" under policies defining occurrence as an accident.  *Townsend Ford, Inc. v. Auto-Owners Ins. Co.*, 656 So.2d 360, 365 (Ala. 1995) (Insurer was required under policy to defend on reckless misrepresentation claim); *Universal Underwriters Ins. Co. v. Youngblood*, 549 So.2d 76, 78 (Ala. 1989) ("The negligence claims and the innocent or reckless aspects of the misrepresentation claims present a sufficient basis to support the trial court's declaration of a duty to defend.") *American States Insurance Company v. Cooper*, 518 So.2d 708 (Ala. 1987).

11

In *Cooper* the court stated:

> The Alabama Supreme Court has established that reliance upon misrepresentations may or may not constitute an "occurrence" within the definition provided by an insurance contract. In *Ladner v. Southern Guaranty Insurance Company*, 347 So.2d 100, the plaintiffs' reliance upon intentional misrepresentations did not constitute such an occurrence. Plaintiffs in the underlying damage suits, however, have alleged that the misrepresentations upon which they relied were either intentionally *or* recklessly *or* innocently made. On the basis of those allegations, the Court finds that both American and Constitution are obligated to defend Cooper and Lakeside Properties, and further to indemnify them, except for intentional misrepresentations.

When a complaint alleges both acts covered and not covered under the policy, the insurer is under a duty to defend at least the allegations covered by the policy. *Tapscott*, *supra*. In this case, at a minimum, American Indemnity had a duty to defend to the allegations of negligence, reckless misrepresentation, and mistaken misrepresentation. There is also Alabama authority for the proposition that if the insurer has a duty to defend the covered allegations it also has the duty to defend the allegations that are not covered by the policy. See, *Universal Underwriters Insurance Co. v. East Central Ala. Ford-Mercury*, 574 So.2d 716, 719 (Ala. 1990) (Insurance company was obligated to defend all claims advanced by the insureds, "even those not covered by the policy.") In *Tapscott*, the court cautioned:

> [A]n insurance company runs the risk of not participating and representing its interests throughout the course of the lawsuit when it decides not to defend a lawsuit because the complaint alleges only intentional torts and the insurance policy excludes coverage for intentional acts. That is a risk the insurance company may choose to avoid by defending the insured regardless of the allegations in the complaint, but reserving its right to withdraw, and

> thus not indemnify, if the resulting judgment is for an
> intentional act.

*Tapscott*, 526 So.2d 574-75.

Standing

American Indemnity argues that Hardie lacks standing because he is not an insured

and that the consent agreement and assignment of rights upon which he relies voids coverage under

the insurance policy provisions issued by American Indemnity.  It is a matter of hornbook law that:

> If the insured effects a settlement with the injured
> person, without the previous consent of the insurer as
> required by the policy, the insurer is thereby released,
> unless otherwise excused, as for example, insurer
> withdraws or refuses to defend, and the insured is not
> entitled to reimbursement of such sum from the
> company.
>
>                    . . . .
>
> If the insurer wrongfully refuses to defend an action
> against the insured, as required by the policy, the
> insured is entitled to effect a settlement and sue for
> reimbursement, even though the policy prohibits
> settlement without the consent of the insurer.
>
>                    . . . .
>
> [I]t has been held that where the insurer breached its
> contract to protect the insured, the insured was free to
> protect its own interest, and the insured's entering
> into an agreement that judgment would be enforced
> only against the insurer was not a breach of the
> cooperation clause of the policy.

7C JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4714 at 521-29 (rev. ed.

1979).

In general, a non-assignment clause prohibits the assignment of rights prior to the to

the occurrence of events which give rise to the insurer's liability but does not prohibit assignment

13

of rights after the loss giving rise to liability has occurred. E.g., *Peck v. Public Service Mutual Insurance Co,*, 114 F. Supp. 2d 51 (D. Conn. 2000); *Kopelowitz v. Home Insurance Co.*, 977 F. Supp. 1179 (S.D. Fla. 1997); *Viola v. Fireman's Fund Insurance Co.*, 965 F. Supp. 654 (E.D. Pa. 1997); *Action Auto Stores, Inc. v. United Capitol Insurance Co.*, 845 F. Supp. 417 (W.D. Mich. 1993). Trousdale could settle the underlying action and assign her rights under the policy based on American Indemnity's refusal to defend. Hardie, therefore, has standing to seek partial summary judgment.

American Indemnity argues that Trousdale never filed a counterclaim against American Indemnity and therefore has not asserted a breach of contract against American Indemnity. This appears to be factually incorrect. Trousdale filed a counterclaim on October 22, 1999 alleging breach of contract and bad faith. (See doc #11). American Indemnity also argued that Trousdale could not assert breach of contract in light of the pending criminal charges. As set out above, in light of the allegations of negligence and recklessness accompanied by mental anguish, American Indemnity's duty to defend arose at the time the amended complaint was filed. Finally, American Indemnity argues that if Trousdale assigned her rights to Hardie under the policy, Trousdale does not have standing to request summary judgment in her favor. Trousdale was required to hire a lawyer to represent her in the underlying lawsuit filed by Hardie despite American Indemnity's duty to defend. Attorney's fees incurred as a proximate result of an insurer's refusal to defend the underlying suit are appropriate damages for breach of contract. *Green v. Standard Fire Insurance Co. of Alabama*, 477 So.2d 333, 335 (Ala. 1985); *Alabama Farm Bureau Mutual Casualty Insurance Co., Inc. v. Moore*, 349 So.2d 1113, 1116 (Ala.. 1977). At a minimum, this right to attorney's fees bestows standing upon Trousdale.

14

On August 5, 1999, the Bentleys filed a motion to intervene pursuant the Rules 19 and 20, *Alabama Rules of Civil Procedure* as plaintiffs in the underlying Hardie complaint asserting "As grounds therefore, Intervenors would show unto the Court that they are similarly situated to the [Hardie] Plaintiffs, and have likewise been victimized by the Defendants, as alleged in the Complaint, even to a greater extent." (Document #26, Exhibit A). Two days prior to the filing of Bentleys' motion to intervene, Hardie had amended his complaint to allege mental anguish. On September 27, 1999, the Bentleys' motion to intervene was granted. The Bentleys were "added" as plaintiffs in [the Hardie] action. (Document #26, Exhibit B). On February 16, 2000, American Indemnity filed its Second Amended Complaint for Declaratory Judgment identifying the Bentleys as additional potential judgment creditors with a contingent interest in the subject American Indemnity policy. (Document #26). Trousdale settled with Hardie and the Bentleys in March 2000. American Indemnity complains that there can be no breach of contract with respect to the Bentleys because (1) no one has officially notified American Indemnity of the Bentleys' intervention and demanded a defense and (2) no demand could have been made because the Bentleys have not filed a complaint setting forth their allegations.

The intervention in the underlying case was proper under Rule 20(a) which provides in pertinent part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.[2]

---

[2] This portion of Rule 20(a) is the same under both the *Alabama Rules of Civil Procedure* and the *Federal Rules of Civil Procedure*.

The Bentleys' motion to intervene was filed after the amended Hardie complaint. The Bentleys in effect adopted not only the original Hardie complaint but the amended complaint as well. American Indemnity's argument that no demand could have been made because the Bentleys did not file a separate complaint is without merit. The Bentleys simply became additional plaintiffs in the Hardie action, for which American Indemnity had already denied coverage. Trousdale did not have an obligation to demand coverage on the basis of additional plaintiffs who simply rode into the suit on the coat tails of the Hardies. The only effect that the Bentleys' appearance in the case had on the lawsuit was to up the ante with respect to the ultimate amount of damages for which Trousdale and/or American Indemnity could be held liable.

Although American Indemnity had a duty to defend and breached this duty, the breach of such a duty does not estop American Indemnity from challenging coverage of the claims. *Alabama Hospital Association Trust v. Mutual Assurance Society of Alabama*, 538 So.2d 1209, 1216 (Ala. 1989). The issue of coverage is not presently before the court.

Based on the foregoing, the magistrate judge concludes that the defendants' motions for partial summary judgment (documents #51, #53 and #56) are due to be granted. A separate order consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 27th day of January, 2002.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

16